```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

BONNIE FIGUERO                                          PLAINTIFF

VS.                                 CIVIL ACTION NO. 3:04CV929LN

PEPPERIDGE FARM, INC.                                   DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant Pepperidge Farm, Inc. For judgment as a matter of law or, in the alternative, motion for amendment of the judgment and remittitur. Plaintiff Bonnie Figuero has responded to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that Pepperidge Farm is entitled to judgment as a matter of law against plaintiff as to the amount plaintiff should receive as payment pursuant to Pepperidge Farm's established business practice.

Plaintiff Bonnie Figuero brought this action to recover damages for Pepperidge Farm's termination of its distributorship agreement with her. The case was tried before a jury, which was charged to determine whether or not Pepperidge Farm had cause to terminate the agreement, and if so, whether Pepperidge Farm had acted in bad faith in performing its obligations under the contract, and if not, to award plaintiff damages as provided by the contract in the event the jury determined the termination was

with cause and without bad faith on the part of Pepperidge Farm.[1] The jury found that Pepperidge Farm had not acted in bad faith and that it had terminated plaintiff's distributorship for cause. Neither party challenges those findings. However, Pepperidge Farm insists in its present motion that the $112,626.99 awarded to plaintiff by the jury is not permitted under the terms of the contract and is wholly unsupported by the evidence. For the reasons that follow, the court must agree.

The distributorship agreement provides that a termination for cause "shall operate to release all rights and obligations hereunder . . . except consignee's right to receive compensation therefor in accordance with the established business practices of Bakery, and each party's right to receive any favorable balances and obligation to pay any adverse balances." Pepperidge Farm correctly points out in its motion that the only evidence adduced at trial concerning its "established business practice" in the event of the termination of a distributorship agreement with cause was the testimony of Doug Kolojack, tho testified that when a

---

[1] The parties' contract provided that in the event of a termination without cause, Pepperidge Farm "will pay to the Consignee a sum equal to (a) fair market value of the Distributorship on the termination date plus (b) 25% of such fair market value, to be determined either by agreement between Bakery and Consignee or, if they shall be unable to agree, by three arbitrators. . . ." Thus, had the jury determined that there was no cause for the termination, the determination of the amount due Figuero for such termination would have been decided through arbitration, as the parties were not able to agree on the value of the business.

distributorship agreement is terminated for cause, it is Pepperidge Farm's established business practice to sell that distributorship for whatever price the market will bear and to pay the proceeds of that sale, less any balances owed by the distributor, directly to the distributor upon receipt of the sale proceeds. Kolojack testified that this established business practice has been followed with respect to Figuero's distributorship. Specifically, he testified that immediately following termination of the agreement, the route at issue was put up for sale. A portion of the route was sold for $1,000, and that amount was applied toward monies owed by Figuero. Much later, in January 2004, it sold another part of the territory (approximately half of the territory) for $10,000. A portion of that amount was applied to Figuero's remaining balance of $1,262.99, and the rest, $8,373.01, was tendered to Figuero.

Despite this proof, the jury arrived at an award of $112,626.99, based on proof that Pepperidge Farm had placed an "optimum" value on the distributorship of $121,000. The jury found that for the termination, plaintiff was entitled to receive this $121,000, less the $8,373.01 she had already received, for a total of $112,626.99. Defendant submits, and correctly so, that the jury improperly relied on the $121,000 valuation as the basis for their award.

There was little, if any, dispute, that there were deficiencies in plaintiff's performance of the contract which, absent extenuating circumstances, would have constituted cause for termination. However, plaintiff took the position throughout the case that even if the distributorship was terminated for cause, she was not limited in her recovery to the contractual damages provided for "cause" terminations because Pepperidge Farm had, in effect, manufactured cause for terminating the contract, and thereby breached its duty of good faith and fair dealing, by various acts and omissions, including failing to provide product, failing to honor the exclusivity of the agreement by having other distributors in plaintiff's area, and other acts and omissions which collectively made it impossible for plaintiff to perform under the contract.

Taking into account plaintiff's position, the jury was instructed that if they found that Pepperidge Farm had engaged in conduct designed to impede or impair plaintiff's ability to satisfactorily perform the contract, then plaintiff's alleged unsatisfactory performance of the contract did not constitute cause for Pepperidge Farm's termination of the agreement. They were instructed that, conversely, if they found that Pepperidge Farm performed its obligations under the contract in good faith, and that "cause" existed for termination of the agreement based on plaintiff's acts and omissions,

> then as provided in the agreement, plaintiff is entitled
> to receive compensation for the termination in
> accordance with the established business practices of
> Pepperidge Farm and in accordance with each party's
> right to receive any favorable balances and obligation
> to pay any adverse balances.

The contract clearly provides that the distributor's right in the event of a termination for cause is to receive compensation "in accordance with the established business practice" of Pepperidge Farm. Moreover, the evidence at trial established without contradiction that Pepperidge Farm's established business practice in the case of a termination for cause is to sell the territory and remit the proceeds to the sale, less any negative balance, to the distributor. Finally, defendant presented uncontroverted evidence that plaintiff has been paid the proceeds of the sales of those parts of the distributorship that have been sold. The jury found that the distributorship was terminated for cause and that there was no bad faith on the part of Pepperidge Farm. It follows, therefore, that plaintiff has received all that she is due under the terms of the contract.

In response to defendant's motion, plaintiff does not directly challenge defendant's proof as to its established business practice, nor does she deny that she has received all sums due her from the sales of those portions of the distributorship that have been sold to date. She simply argues that the jury's award of $112,626.99 was reasonable and sustainable in view of the proof that defendant, pursuant to its

5

"standard procedure for valuation of territories," put a value on the distributorship of $121,000, which was its asking price for the distributorship; that plaintiff paid $66,000 for the route in 2003; and that the route, as operated by defendant following termination of plaintiff's distributorship agreement, generated over $600,000 in sales, more than it had ever made.

In the court's opinion, these facts might be relevant on the issue of damages but for the fact that the contract itself expressly and unambiguously limits plaintiff's recovery in the event of a termination for cause to the defendant's established business practice, and the uncontroverted proof that defendant has paid plaintiff in accordance with its established business practice. Conceivably, there could be potential bases for a recovery other than that specifically provided for in the contract for a termination for cause. If plaintiff had proven that Pepperidge Farm had itself materially breached the contract, or had shown that the Pepperidge Farm had not in good faith made reasonable efforts to sell the territory and to obtain a reasonable price therefor, then she would not be limited to contractual damages. However, the jury specifically rejected plaintiff's position on the former basis. As to the latter, it is of course implicit in the contract that Pepperidge Farm was required, even upon termination, to act in good faith and deal fairly with plaintiff, and thus Pepperidge Farm had a duty, in the

court's view, to make reasonable efforts to sell the distributorship for a reasonable price.[2]  Plaintiff, however, has failed to offer proof that this did not occur.  The court notes further that plaintiff did not request a jury instruction addressed to this issue.

As a matter of law, based on the evidence presented at trial, the most the jury could have determined that plaintiff was owed to date is the $8,373.01 which has already been paid as the proceeds from the sale of parts of the distributorship, less balances owed by plaintiff.  At this point, and until such time as there has been a sale of the remainder of the distributorship, plaintiff is entitled to no additional compensation.  Pepperidge Farm is therefore entitled to judgment as a matter of law against plaintiff as to the amount plaintiff should receive as payment pursuant to Pepperidge Farm's established business practice.

Pepperidge Farm has advised it has no objection to entry of an order requiring Pepperidge Farm to pay any future amounts received from the sale of the remaining portion of the territory to plaintiff, and it is so ordered.

Based on the foregoing, it is ordered that Pepperidge Farm's motion for judgment as a matter of law against plaintiff as to the

---

[2] That is to say, Pepperidge Farm could not satisfy its obligation by simply unloading the distributorship for a nominal sum.

amount plaintiff should receive as payment pursuant to Pepperidge Farm's established business practice is granted.

    SO ORDERED this 25th day of July, 2006.

                                          /s/ Tom S. Lee  
                                          UNITED STATES DISTRICT JUDGE